Good morning, Your Honors. David Zucman on behalf of Gabrielle Leon. I will do my best to reserve two minutes to answer whatever remaining questions exist. Your Honors, there are two matters in this case. The question of whether Mr. Leon's partially destroyed shot urinary system was sufficiently destroyed, which required him to get surgery and a regime of opiates. Is that good enough to qualify for equitable tolling? That seems pretty obvious to me. It seems that if anything is going to qualify for equitable tolling, it's going to be being in a hospital for a week unconscious while your excretory system is being reconfigured. And it seems that it would also be pretty painful and horrible afterwards, and that the long regime of morphine and opiates to be painkillers would be the reason why you couldn't get your habeas petition filed on time. The major distinction between Mr. Leon's case and all the other cases cited by the district court and by opposing counsel is that his condition was getting worse. It was getting so bad that California felt that it was necessary to do surgery. So that is the primary distinction. Now, how many days do you need? 56? I think, well, he claims 99, yes, and I think he needs 56. In these equitable tolling cases where there's a disability during a period during which the time would run, our case law tends to disfavor those for whom the disability was early in the period and then there was a sort of free space later on in which there wasn't any serious impediment. When, in relation to how this time was running, how close to the time period was he disabled from his operations and his morphine and so on? The sweet spot. It was in October. The statute ran in December. So it was the particular period is exactly when he had the surgery and was getting all the opiates and painkillers as a result. Okay. Did the district judge have the medical records? Is that right? Well, I guess sort of. What happened was after Mr. Leon filed, there was an OSC issued saying it doesn't look timely. Please explain. Mr. Leon said, okay, I'll do that, but I need 60 days to get my records. The magistrate said, you can have 30, and it was already two weeks into the period. So he gathered what he could, which ended up being, I think, 142 pages, if memory serves. Judge Real, I think, sent the records to the magistrate. Somebody said he must have submitted all the medical records he's ever had from his whole life. Yeah, I think the district court indicated some displeasure with the way that the records were presented. It didn't. And to be fair, I find medical records to be largely inscrutable to begin with, so it's not like it gives you a simple chronology as to what happened when. Of course, I believe that's all the more reason why the district court ought to have given Mr. Leon a full opportunity. Was he represented at the time he did it? Of course not, Your Honor. He was a pro se litigant, and it should have been a liberal construction with respect to his allegations. That is the standard for judgment on the pleadings with pro se litigants. You said you had two points. Well, my second point really dovetails. That's really whether the opportunity to present was adequate. So I think we kind of already covered that ground. This one seems clear to me. I don't really have anything to add to my papers. Well, my question is if we were to agree with you that he should have had more time, is it necessary to remand this for the district court to make that determination, or is it a determination we can make? That's an interesting question. I think that it's a determination that you can make because of Laws v. Lamarck and because of Mendoza v. Carey. It seems to me that in those cases where a law library not being open was a sufficient cause for equitable tolling or where a language barrier exists, if those are the floors upon which, you know, we know that equitable tolling is justified in those instances, this is above that. So unless the district court were to find that Mr. Leon was making all this stuff up and that it just wasn't true and he was completely able and this stuff really just didn't happen, I think there has to be equitable tolling. But how do you do that? The basic argument you have, I think, is, look, he was so sick that during this period of time, reasonable people would have given him equitable tolling. It would have been reasonable to give him equitable tolling. Okay. You use that phrasing. No, I understand. That's perhaps a little loose. Okay. But you're saying that he's so sick we could just take, you know, notice of that fact. Don't we then have to go back? You're saying it's our task to go back to the, what, the medical records and make that determination? Look, this case happened so fast. The OSC was issued before respondent even appeared, so none of the contrary arguments that would ordinarily be marshaled were even brought up. So, I mean, I guess it's possible they could call the treating physician and the physician could say, that guy was fine, I don't know what he's talking about. Or they could call the prison doctor who says, I met with him every day. He was doing puzzles in the lobby while I was waiting to see him. I mean, you could hypothesize any number of facts which would take out the claim. It just seems pretty improbable, because we know that California doesn't pay for urological surgery unless it's absolutely necessary. And it just, it sounds like a compelling claim. They put him in a hospital for a week. No, but that would take care of certainly that week and something before and something after. The question is, what is the something before and what is the something after? And for that, we'd have to look at the record, right, and make that determination. The district court didn't. That's entirely correct. It didn't. But I think, you know, the question that Judge Reinhart has, or I have, is, look, do you think we can just do it, or do you think that the better practice would be to send it to a district court to make that determination? I, being a lawyer, I, of course, am always in favor of full hearings. But it also seems to me that it's pretty well agreed that morphine is really powerful stuff, that we have it in Schedule II. It's commonly, I mean, it's the other side of heroin. So it's not like this is something, this is a drug that when someone's on it, prescribed for pain. You know, I actually struggled with the, there was an unpublished case that said that someone being under morphine couldn't waive their Miranda rights. And I thought about 28J-ing it, but then it was unpublished, so it didn't seem like authority, so it left me in the conundrum. But I think that I could just fall back onto good old 812, 21 U.S.C. 812, and say this is a prescribed substance that we know has powerful pharmacological effects. We could just leave it at that. Well, how much time, extra time, was necessary to meet this guarantee? I think it was 56 days, and he claimed 99. Pardon me? Fifty-six days, and he claimed 99, which was documented in his records. He was pretty timely on everything else before things went south. You have just about two minutes, sir. Thank you, Your Honor. Good morning, Your Honors. Deputy Attorney General Stephanie Chow on behalf of Apelli Hedge Pet. Leon has not established that he is entitled to equitable tolling. He has not shown that both a physical impairment or medication rendered him unable to file his habeas petition in a timely manner. He had this physical disability since 2002. And in the years 2006 and 2007, he was able, despite this physical impairment, to file three timely state habeas petitions. He does not provide explanation as to the delay of four-and-a-half months between finality of a state decision and the filing of his first state habeas petition, nor does he fully explain why there was a six-month delay between the finality of a decision on his state Supreme Court habeas petition and the date of his surgery. Let me ask you this. Let's assume that somebody has a year, which is the normal period, and for 10 months he has not filed anything. Of course, he's not required to file anything until another two months. And then in month 10, he's struck down with an absolutely devastating injury, and he's totally incapacitated until after the period is run. Equitable tolling or not? During the period that he is completely struck down, you know, for instance, there are cases where someone has been in a coma. During that period, he would be impossible for him to file a habeas petition, and that should be entitled to equitable tolling. So why are you telling me that he could have done all of these things earlier? Because I think your answer tells me that if you're incapacitated at the end of the period, that you get equitable tolling. Yes, for that period. But he also has to establish that he has been reasonably diligent during the entire duration of the period. But what does reasonably diligent mean? Meaning he's not required to file anything for a year, and at month 10, he becomes totally incapacitated and then is incapacitated for the next several months. What do you mean reasonably diligent during the first 10 months? There was nothing he was required to do. He's not required to file within that time, but the law does require to show some reasonable diligence in pursuing his federal relief. Are you maybe backing away from your answer then? My question is, just to repeat so it's clear, he does nothing. He's filed nothing. He might have thought about it. He might have scribbled some stuff, but he's filed nothing for 10 months. He's then entirely incapacitated for the next three months, and I ask you whether he's entitled to equitable tolling. You said yes. Do you now want to say no? No. He's entitled to equitable tolling for a certain period. Well, how about the last two months of that period during which he was entirely incapacitated? That's my question. Yes, during the last two months that he was. And so you say he's required to show diligence during the previous 10 months? What do you mean? Or do you not mean that? I mean that equitable tolling, there are two prongs to it, and he also does have to show reasonable diligence, that he has been filing, say, state petitions. Well, in the prior period he actually was pretty diligent. This is not somebody who just sat around, so if you look at the behavior up until he goes in for surgery sometime in October, I think it was in 1998, he's moving right along. He's been pretty diligent. Isn't that right? Is that right? He had been diligent at some point during the two or three, between 2006 when he filed his first state petition and the end of 2008 when he had his surgery. During that two- or three-year period, there was a portion in between in which he was diligent, but there was a six-month period between the end of his state collateral petitions and his surgery that is unaccounted for. And doesn't that suggest to you that maybe that his symptoms were increasing, that he was having problems, and that this was distracting him from his pursuit of his legal remedies? I mean, if anything, I think it proves sort of the opposite of what you're suggesting. And isn't the question of tolling, isn't your argument really taken care of? If you wait until the last day that you have for filing something, and at midnight you're struck with a disability that takes you out for that entire day, you get equitable tolling, right? Go into a coma on the last day. How much equitable tolling do you get? For the period that you are in. Yeah, so you get one day. So that takes care of that problem. I mean, no one's coming in here saying, by the way, not only do I want 56 days, maybe he is saying that, but I don't think anybody up here is saying, gee, let's just get 99. I mean, you take a look and see what disability did he have, what impairment did he have, realistically, that impacted his ability to file. So it fits. But the fact that he was doing other things and then stopped doing these things, it suggests to me, at least, that he was starting to have a problem and that that problem came to fruition in his surgery. I think the interesting question is do you think that we can decide that or do you think we have to send it back to a district court for that determination? Well, I believe that that's a factual determination that should go to the district court to review the documentation, determine whether any additional facts are necessary and make those factual determinations. Is there more evidence that needs to come in? It seems that appellee or appellant believes that there are. Well, not if a court is willing to decide it on the basis of what we have. Do you think there's more factual evidence that's necessary? I don't believe that there are any additional facts that are necessary, but I also believe the facts that are present belie the need for equitable tolling. I believe the facts as they are presented where appellant has claimed that his condition started to worsen in April of 2007, after which he was able to file a state Supreme Court petition, belied the fact that his injury was so significant. Maybe he had prepared it earlier. Maybe he was prepared on that. How do we know? Well, he was able to prepare his federal filing also, just he didn't do it in a timely manner. You know, a lot of people complain about the lack of resources to the court, the delay in deciding cases. I wonder whether the U.S. Attorney's Office, not the U.S. Attorney, sorry, the Attorney General's Office, the district court, this court, counsel doesn't have better things to do than to send this back, have a hearing, maybe another factual hearing, and whether this plaintiff has met the statute of limitations. Wouldn't it be better to get to the merits of this case and get it decided instead of having everybody have another appeal on the procedural issue, then send it back, then get to the merits and have an appeal on that? I don't know what your resources are in the Attorney General's Office. I suspect not as much as you'd like. That's true. Wouldn't we all be better if we just decided that question? You know, that may be possibly true in terms of resources. However, the procedure In terms of life. In terms of life in general. Most habeas petitioners lose on the merits when you get there. They do. And this way, I don't know the underlying merits, but if he's in the normal habeas petitioner, he's going to lose on the merits. That's true. However, the court went through the procedural aspects first before. The statute of limitations is waivable by you. Before getting to the merits. The statute of limitations is waivable by you, correct? That's correct. However, we likely wouldn't have waived it if it had come to our office. Okay, he should have filed basically by the end of November 2008, correct? By, yes, December 1st of 2008. Yeah, right. And we know that he is having real trouble. He goes in for surgery in October. He's under morphine and so on. Yeah, boy. I think you've got a tough case to make if you go back on the merits of the statute of limitations issue. Well, I believe despite his statement that he was unable to perform the basic functions while on morphine, the fact is he was released back to the prison after recovering in the hospital after a week. And while he was on his morphine prescription, which apparently lasted from October until May of 2009. Okay, so he's admitted for the operation on the 20th. The operation is on the 21st. He's still got pain on the 22nd. He's still in the hospital. He's not discharged until the 27th. He gets morphine on the 28th. He gets follow-up. He's getting leaking. He maybe has to be redone in January. This is not someone with, hey, I'm doing fine now. Right, but the test is whether it was not possible for him to file in a timely manner and given the assistance he had and the fact that he was monitoring his own progress and writing his own medical requests. Thank you. Thank you. I'm supposed to submit right now, right? Yes. One of the very few lawyers who has understood that principle. Case just argued will be submitted. Next case for argument is U.S. versus Espinosa.
judges: Breyer, Reinhardt, Fletcher